UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ANDY R. MCLEAN, et al., | ) |
| | ) |
|     Plaintiffs | ) |
| | ) |
| v. | ) 1:12-cv-00381-GZS |
| | ) |
| DELHAIZE AMERICA, et al., | ) |
| | ) |
|     Defendants | ) |

## RECOMMENDED DECISION

Defendants Delhaize America, d/b/a Progressive Distributors, Inc., Anne True, Kathy McLeod, and Janise Monaghan move for dismissal of the plaintiffs' complaint pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure. ("Motion," ECF No. 4.) The court referred the motion for report and recommendation. I now recommend that the court grant in part and deny in part the motion to dismiss.

### ALLEGATIONS

For purposes of the motion to dismiss, the following factual allegations are treated as true. As alleged, Plaintiff Andy McLean was an employee of Progressive Distributors in Winthrop, Maine. (Complaint ¶ 3.) Shortly before September 12, 2011, Andy sought medical leave for substance abuse and mental health issues. (Complaint ¶ 8.) Andy disclosed the reason for his request for leave to his managers, Defendants Anne True and Kathy McLeod. (Complaint ¶ 8.) He alleges that his request was met with "resistance" by Progressive and that Progressive, through Anne True and Kathy McLeod, intentionally, knowingly, and/or recklessly disclosed the severity of Andy's substance abuse and mental health issues to his co-workers. (Complaint ¶ 9.) Andy further claims that Progressive was at fault when it "disclosed" his confidential mental health and substance abuse treatment information to others and "provided" him with an EAP advocate who was not working in

his interest. (Complaint ¶¶ 11, 12, 19.) The disclosure upset Andy and caused him to refrain from returning to work on September 12, 2011. (Complaint ¶ 10.)

At some point, Andy informed Progressive of the distress caused by the disclosure. (Complaint ¶ 11.) Subsequently, he had discussions with Janise Monaghan regarding his reintegration into the workplace and attempts to accommodate his condition. (Complaint ¶ 11-13.) On October 28, 2011, Andy alleges that Monaghan left him a voicemail which included an insulting comment, specifically, that Susan McLean is Andy's "druggy slut wife." (Complaint ¶ 14.) Andy and Susan were both upset by the message. (Complaint ¶¶ 15, 17.) Andy was again set to return to work on October 30, 2013, but was unable to do so because of his upset about the phone message. (Complaint ¶ 15.) Evidently, Andy is no longer employed by Delhaize America d/b/a Progressive Distributors,[1] but he does not plead discriminatory or retaliatory termination or constructive discharge.

## MOTION TO DISMISS STANDARDS

A motion to dismiss based upon lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure may require the district court to weigh evidence and engage in factual determinations in order to determine whether it has jurisdiction to hear the case. Torres-Negron v. J & N Records, L.L.C., 504 F.3d 151, 163 (1st Cir. 2007). On the other hand, when the question of subject matter jurisdiction focuses on a pure question of law, the court treats all factual allegations as true and draws all reasonable inferences in the plaintiff's favor. Cooper v. Chao, 71 F. App'x 76 (1st Cir. 2003). Questions related to the exclusivity and immunity provisions of the Maine's worker's compensation provisions can be properly resolved as a matter of law pursuant to Rule 12(b)(1). Breton v. Travelers Ins. Co., 147 F.3d 58 (1st Cir. 1998).

---

[1] The complaint does not allege wrongful termination or constructive discharge and it says nothing about Delhaize/Progressive being the "former" employer. In fact, the complaint alleges that Andy "has been" an employee from "1994 to present." (Complaint ¶ 7.) It is the defendants who characterize Progressive as Andy's "previous employer" (Motion at 1) and the plaintiffs' response does not dispute that assertion.

Rule 12 of the Federal Rules of Civil Procedure also provides that a complaint can be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a claim, a plaintiff must set forth (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to relief"; and (3) "a demand for the relief sought." Id. R. 8(a). To decide a motion to dismiss, the court accepts as true the factual allegations of the complaint, draws all reasonable inferences in favor of the plaintiff that are supported by the factual allegations, and determines whether the complaint, so read, sets forth a claim for recovery that is "plausible on its face." Eldredge v. Town of Falmouth, 662 F.3d 100, 104 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)).

## DISCUSSION

The complaint consists of the following claims advanced by Plaintiff Andy McLean: disability discrimination under the Maine Human Rights Act and the ADA; retaliation in violation of the Family and Medical Leave Act and the disability statutes; invasion of privacy; and intentional infliction of emotional distress. Additionally, Plaintiff Susan McLean[2] advances her own claim of slander. The defendants submit that all the claims are subject to dismissal pursuant to Rule 12(b)(6). (Motion, ECF No. 4.) Additionally, they maintain that Andy McLean's claims for intentional infliction of emotional distress and invasion of privacy are subject to dismissal for lack of subject matter jurisdiction. (Id. at 11-16.)

In their response to the motion to dismiss, the McLeans fail to oppose dismissal of the intentional infliction of emotional distress and invasion of privacy claims on jurisdictional grounds. They do not even respond to this particular legal argument. Pursuant to the Workers' Compensation Act's exclusive remedy provision:

---

[2] For ease of reference, I will refer to the McLeans by their first names when differentiating between the plaintiffs in terms of the allegations and legal claims.

> An employer who has secured the payment of compensation . . . is exempt from civil actions … at common law . . . involving personal injuries sustained by an employee arising out of and in the course of employment . . . .  These exemptions from liability apply to all employees, supervisors, officers and directors of the employer for any personal injuries arising out of and in the course of employment[.]

39-A M.R.S. § 104.  See also Cole v. Chandler, 2000 ME 104, ¶ 9, 752 A.2d 1189, 1194-95 (applying the exclusivity provision to claims against the employees of the defendant company). Based on this provision and the plaintiffs' failure to oppose the motion to dismiss these claims, I recommend dismissal of Andy's state law tort claims on subject matter jurisdiction grounds.

The McLeans likewise do not respond to the individual defendants' argument that they are entitled to dismissal of the disability discrimination and retaliation claims because the ADA and the MHRA do not impose individual coworker liability on employment discrimination claims.  (See Motion at 18 ¶ 6.)  As the defendants contend, neither the ADA nor the Maine Human Rights Act permits claims of disability-based employment discrimination or retaliation to be advanced against fellow employees, including supervisors.  Roman-Oliveras v. P.R. Elec. Power Auth., 655 F.3d 43, 50-52 (1st Cir. 2011) (ADA);  Fuhrmann v. Staples, The Office Superstore E., Inc., 2012 ME 135, ¶¶ 34-35, 58 A.3d 1083, 1098 (holding there is no individual liability for co-employees under the Maine Human Rights Act).  For this reason, I recommend the dismissal of Andy McLean's disability discrimination and disability retaliation claims against the individual defendants.

As for the remaining claims, what the McLean's brief in their response to the motion boils the complaint down to essentially three theories of liability.  The first theory is that mistreatment such as disclosing personal medical issues to coworkers, providing an advocate who is not serving the employee's interest, and calling an employee's spouse a druggy and a slut are adverse employment measures that are sufficient to state a claim based on the outrageousness of the conduct. (Response at 2-5.)  Second, the McLeans argue that such conduct amounts to a "denial of accommodation to reintegrate into the workplace."  (Id. at 5.)  The third theory of liability pertains to Susan McLean's slander claim.  The idea is that calling Susan a "druggy slut" on the answering

machine generated liability because the statement is per se defamatory and therefore excuses Susan from having to plead special damages. (Id. at 6.) These theories are addressed in turn.

A.    **Discrimination under State or Federal law**

McLean's disability claim is not a model of clarity, but interpreted in light of the response to the motion to dismiss it appears that the only adverse employment action Andy McLean is complaining about consists of the alleged failure to reasonably accommodate his disability by disclosing the fact of his mental health and substance abuse treatment to co-workers and providing him with an "advocate" who, rather than facilitating his return to work, counterproductively disparaged his wife over the phone.[3] (Complaint ¶ 19; Response at 4.)

Under both the Americans with Disabilities Act and the Maine Human Rights Act, the meaning of the term "discriminate" includes failure to provide a reasonable accommodation for the known physical or mental limitations of an otherwise qualified individual with a disability. 42 U.S.C. § 12112(b)(5)(A); 5 M.R.S. § 4553(2)(E). Failure to accommodate a reasonable request that is needed for an employee to perform her job will expose an employer to liability even in the absence of actual discriminatory animus toward the disabled. Higgins v. New Balance Ath. Shoe, Inc., 194 F.3d 252, 264 (1st Cir. 1999) (explaining that a failure to accommodate claim does not require a showing of discriminatory animus and that any failure to provide reasonable accommodations for a disability is necessarily "because of a disability"). Four elements govern the analysis of a failure-to-accommodate claim: (1) whether the plaintiff is a qualified individual with a disability under the applicable statute; (2) whether the employer is subject to the statute; (3) whether the employer, despite knowing of the employee's physical or mental limitations, did not reasonably accommodate those limitations; and (4) whether the employer's failure to do so affected the terms, conditions, or

---

[3]    Andy McLean does not suggest that his separation from employment arose from a termination or from a constructive discharge. Nor does he allege a hostile work environment.

privileges of the plaintiff's employment.  Gomez-Gonzalez v. Rural Opportunities, Inc., 626 F.3d 654, 664 (1st Cir. 2010);  Higgins, 194 F.3d at 264.

      Defendants identify pleading deficiencies under the third and fourth prongs, noting that the complaint does not identify what accommodations Andy required to perform his job or how the failure to provide those accommodations adversely affected the plaintiff's employment.  (Motion to Dismiss at 7.)  The disclosure of Andy's mental records and the inappropriate message on the voice mail simply are not "accommodations" and have nothing to do with a failure to accommodate claim.  While the conduct may be actionable on some other basis, it does not provide the basis for a factually plausible failure to accommodate claim.  The allegations about failing to provide an "advocate" could approach a plausible claim of failure to accommodate if given some context and meaning, but the allegations are entirely conclusory in nature and run afoul of the Iqbal pleading standard.  As a general matter, an employer does not have a duty to provide its employees with "advocates" in relation to the employees' requests for accommodations.  If there was a specific reason why Andy needed such a person, he had an obligation to explain how he made the request and what he needed by way of "advocacy" in order to perform the functions of his job and why the request for such a person was reasonable.

      Presumably the advocate was Monaghan, the human resources officer described in the complaint.  Monaghan "presented herself as an employee advocate and liaison to accommodate Andy McLean's disability and to coordinate the stressful work environment caused by the wrongful disclosure and to reintegrate him back into the workplace."  (Complaint ¶ 11.)  Although it can reasonably be inferred that Monaghan's comments did not help matters, the complaint does not reveal how Monaghan engaged in discriminatory treatment of Andy in terms of failure to provide a requested workplace accommodation.  If Andy means to allege that he required someone to facilitate his return to work by speaking with coworkers about respecting his privacy, there is no allegation that Monaghan did not do so.  There is no plausible failure to accommodate on these allegations.

In his response to the motion to dismiss Andy argues that the form of discrimination he has pled is a violation of the confidentiality requirements under 42 U.S.C. § 12112(d). (Response at p. 2.) Subsection (d)(1) states that the prohibition against discrimination extends to medical examinations and inquiries. Subsection (d)(4) provides the following admonition:

> (B) Acceptable examinations and inquiries
>
> A covered entity may conduct voluntary medical examinations, including voluntary medical histories, which are part of an employee health program available to employees at that work site. A covered entity may make inquiries into the ability of an employee to perform job-related functions.

Id. § 12112(d)(4)(B). This information is accorded the same degree of confidentiality as is afforded to medical information obtained from a pre-employment medical examination or history. Id. § 12112(d)(4)(C). The latter provision provides that information from a pre-employment medical condition or history must be collected and maintained on separate forms and in separate medical files and treated as confidential, with the following exceptions:

> (i) supervisors and managers may be informed regarding necessary restrictions on the work or duties of the employee and necessary accommodations;
>
> (ii) first aid safety personnel may be informed, when appropriate, if the disability might require emergency treatment; and
>
> (iii) government officials investigating compliance with this chapter shall be provided relevant information on request[.]

Id. § 12112(d)(3)(B).

The complaint states that unknown individuals, including True and McLeod, disclosed "the severity of [Andy's] mental health and substance abuse" to unspecified "co-workers of Andy" (Complaint ¶ 9), the information having been gleaned by them from Andy in conjunction with his request to take Family and Medical Leave Act leave and to qualify for the company's EAP health plan program. This allegation at least plausibly states a claim of discrimination for breach of the confidentiality provision of § 12112(d), especially in regard to the company's own EAP health plan program. McLeod and True are identified as managers who might be legitimately in possession of

this information (Andy alleges he "had" to disclose his request for leave to them, Complaint ¶ 8) and if they disclosed a medical history obtained to enable participation in an employee health program to co-workers who do not fall within the exceptions, it could state a claim of discrimination. See, e.g., EEOC v. Thrivent Fin. for Lutherans, 700 F.3d 1044, 1048-50 (7th Cir. 2012) (addressing threshold issue of whether the information was provided through a "medical inquiry" and affirming entry of summary judgment upon answering that question in the negative); Lee v. City of Columbus, 636 F.3d 245, 258 (6th Cir. 2011) (noting that the limited disclosure protection protects disabled employees from job discrimination by ensuring results of job-related medical examinations are confidential but neither expressly nor implicitly restricts the role of supervisory personnel in receiving and processing an employee's medical information). While not artfully pled, even under the Iqbal pleading standard this complaint states a plausible claim of discrimination under the ADA based upon the claim of impermissible disclosure of medical history.

Defendant also argues that Andy has not alleged that he was adversely affected as to the terms, conditions or privileges of his employment as a result of the claimed discrimination. But Andy asserts that the disclosure of the confidential information made it emotionally impossible for him to return to the workplace on September 12, 2011,[4] the date he was scheduled to return. (Complaint ¶ 10.) Such an outcome obviously adversely affected the terms of his employment.

**B.      Retaliation under the FMLA and the ADA**

In addition to prescribing a set of leave entitlements, the FMLA makes it unlawful for an employer to (1) "interfere with, restrain, or deny the exercise of or the attempt to exercise" any of the leave entitlements or (2) "discharge or . . . discriminate against" an employee for, among other things, exercising FMLA rights. 29 U.S.C. § 2615(a), (b). Should an employer do so, the FMLA authorizes the employee to seek redress in a private civil action. Id. § 2617. In Pagan-Colon v.

---

[4] I admit to some confusion regarding Andy's allegations. He says his out of work request occurred shortly prior to September 12, 2011, and that he was prepared to return to work on September 12. Apparently the requested leave under the FMLA was of short duration. It could have been better pled.

Walgreens of San Patricio, Inc., 697 F.3d 1 (1st Cir. 2012), the Court of Appeals for the First Circuit identified three elements of a retaliation claim under the federal FMLA statute:

> [T]o make out a prima facie case of retaliation, a plaintiff must show that: 1) he availed himself of a protected right under the FMLA, 2) he was adversely affected by an employment decision, and 3) there was a causal connection between the protected conduct and the adverse employment action.

Id. at 9.  While Andy alleges that he asserted his right to leave under the FMLA, there is no allegation that he suffered any adverse action in connection with his FMLA request.  In fact, all he alleges regarding the FMLA is that he took several leaves of absence under the FMLA without incident (Complaint ¶ 8) and his request for leave for substance abuse treatment "met with resistance" (Complaint ¶ 9).  He does not allege that he was denied leave, demoted, had his hours cut by his employer or suffered any other adverse consequence over requesting or taking FMLA leave.  In other words, he does not allege he was denied FMLA leave.  Nor does he allege that he was discriminated against because he took FMLA leave.

The emotional upset he alleges in conjunction with the violation of the ADA confidentiality provision is not alleged to have a causal connection to a FMLA leave request, especially since his medical information was provided not only because he requested leave from work, but also, and more significant to his discrimination claim, because of his desire to participate in the company's EAP program for mental health and substance abuse.  (Complaint ¶ 8.)  Andy's complaint simply does not allege facts that set forth a claim that an adverse employment action was taken in retaliation for his exercise of FMLA rights.  He does not allege that Progressive refused to allow him to return to work; indeed he alleges the opposite, that Progressive tried to reintegrate him into the workplace.  (Complaint ¶ 13.)  His vague assertion that his leave request met with resistance does not set forth a claim of retaliation under the FMLA.  Assuming that the leave from work between September 12 and October 28 was taken pursuant to the FMLA, a fact which Andy never alleges, there is no plausible factual basis for inferring that the October 28 phone message regarding Andy's wife was left in

9

retaliation for taking FMLA leave or that it amounted to an adverse employment measure.  In other words, Andy has not plead facts in support of either the causation prong or the adverse employment decision prong of a prima facie FMLA retaliation case.

To make out a prima facie ADA retaliation claim, the plaintiff must show that: "(1) he engaged in protected conduct; (2) he experienced an adverse employment action; and (3) there was a causal connection between the protected conduct and the adverse employment action." Calero–Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 25 (1st Cir. 2004).  Presumably Andy's "protected conduct" under the ADA was his request to take FMLA leave.  He has not alleged any other protected conducted because he has not alleged that he requested reasonable accommodations for his disability.  Disclosure of medical history is the claimed discriminatory act under the ADA.

Andy might have argued that there is considerable overlap between the allegation of discrimination and the allegation of retaliatory animus in this case.  Perhaps Andy intended to suggest that his supervisors, McLeod and True, grew frustrated with his repeated requests for FMLA leave and retaliated by gratuitously releasing his medical information to co-workers.  The problem with that theory is that he has neither alleged it nor argued it.  Furthermore, the only adverse employment action he can point to is the release of the medical information itself and, thus, whether True and McLeod were motivated by discriminatory animus or retaliatory animus is irrelevant.  The single adverse employment decision identified in the complaint is the release of medical information and I recommend that the court allow that claim to go forward under the statute that provides the right in question.

**C.    Slander**

Susan McLean brings her own claim for slander alleging that the voicemail message left by Monaghan is actionable slander.  The defendants argue that the claim must be dismissed because there is no allegation of special harm or actionability absent special harm.  (Motion to Dismiss at 19.)

10

"Under Maine common law, a plaintiff alleging defamation must show a false and defamatory statement published without privilege to a third party resulting in harm to the plaintiff." Levesque v. Doocy, 560 F.3d 82, 87 (1st Cir. 2009) (citing Lester v. Powers, 596 A.2d 65, 69 (Me. 1991)). "Whether a false statement conveys a defamatory message is a question of law." Morgan v. Kooistra, 2008 ME 26, ¶ 26, 941 A.2d 447, 455. Certain categories of defamatory statements, including statements falsely alleging a punishable criminal offense, imputing a disgraceful disease, or relating to a profession, occupation or official station in which the plaintiff is employed are considered defamation per se and do not require proof of special harm. Picard v. Brennan, 307 A.2d 833, 834 (Me. 1973); Sandler v. Calcagni, 565 F. Supp. 2d 184, 192 (D. Me. 2008). "Recovery for slander *per se* requires no showing of special harm beyond the publication itself." Rippett v. Bemis, 672 A.2d 82, 86 (Me. 1996).

Susan does not contend that she can prove special harm, but contends that her allegations describe slander per se, relying upon the Restatement formulation of the law of defamation, which includes criminal conduct involving moral turpitude, matters incompatible with one's business, trade, profession, or office, and allegations of serious sexual misconduct. Restatement (Second) of Torts §§ 570, 571, 574. (Response at 6.)

Based on the allegations, the only person who overheard the statement in question, other than Susan, was Andy McLean. A defamatory statement must be "construed in the light of what might reasonably have been understood therefrom by the persons who [heard] it. In interpreting the language, it is . . . a question of . . . the understanding of those to whom the words are addressed and of the natural and probable effect of the words upon them." Picard, 307 A.2d at 835 (quoting Chapman v. Gannett, 171 A. 397, 398 (Me. 1934)). "[D]efamation consists solely in the effect produced upon the minds of third parties." Id. (quoting Chapman, 171 A. at 398). The context in which a statement is made is important to determining meaning. Rippett, 672 A.2d at 86 (assessing a claim of defamation per se based on "the context of [the] allegations").

11

Because the audience was limited to Susan's husband, and because Andy McLean is himself a plaintiff in the action fully capable of setting forth allegations of what effects Monaghan's statement produced upon his own mind, imputing harm by inference is a very peculiar operation. For instance, nothing in the allegations even suggests that this is a case in which the words spoken would justify Andy to infer that Monaghan has access to undisclosed defamatory facts concerning Susan's actual behavior. See Ballard v. Wagner, 2005 ME 86, ¶ 10, 877 A.2d 1083, 1087 (discussing the distinction between statements of opinion and statements of fact and how some statements of opinion can be actionable if they imply the existence of undisclosed defamatory facts). In the absence of additional allegations suggesting the existence of some factual context suggesting that Andy might reasonably infer that Monaghan was implying the existence of per se defamatory facts involving crime or serious sexual misconduct, the complaint fails to support a plausible inference of per se harm, let alone actual harm. For example, in the context of spoken insults like "slut," or similar pejoratives, commentators have observed that context is pivotal to a finding of per se actionability.

> The courts have tended to characterize the expressions "slut," "bitch," and "son of a bitch" as terms of reproach and vulgar abuse, but maintain that the general rule is that, in themselves, they are not actionable as slander, but there is some recognition that they are actionable per se if in written or printed form. While most of the cases recognize the general rule that "slut," "bitch," and "son of a bitch" do not, in themselves import unchastity, lewdness, or criminal conduct, many cases do hold that the terms are capable of implying such conduct when applied to a woman under certain circumstances and at a given time and place. This proposition appears to be especially true where the words were used in conjunction with other words or phrases which clearly imputed unchastity or criminal behavior.

See, generally, 13 A.L.R.3d 1286 §§ 2(a). See also id. § 3 (collecting cases). This rationale extends equally to Monaghan's use of the word "druggy." There is nothing in the allegations that would support an inference that Andy could reasonably infer from that statement that Monaghan was disclosing any defamatory facts to him relating to criminal conduct involving moral turpitude or relating to sexual misdeeds. The same rationale applies with regard to Susan's argument that she has somehow been demeaned in relation to her role as homemaker. As alleged, the "druggy slut wife"

remark, while unprofessional in the extreme, is not slanderous per se.  Consequently, Susan must allege special harm.  Because the complaint omits allegations of special harm and the facts alleged do not warrant a finding of actionability in the absence of special harm, the court should dismiss the defamation claim.

## CONCLUSION

Based upon the foregoing, I recommend that the motion to dismiss be denied as to an ADA claim of discrimination based upon a violation of the confidentiality provision of the ADA.  I further recommend that the motion be granted as to all other claims and as to all defendants except for Delhaize/Progressive.  This recommendation, if adopted, will terminate Susan as a plaintiff in this action.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

March 27, 2013                                         /s/ Margaret J. Kravchuk
                                                       U.S. Magistrate Judge